218 F.2d 426
 ATLANTIC COAST LINE RAILROAD COMPANY and John W. Martin, as
Trustee of the property of the Florida East Coast
Railway Company, Appellants,
v.
UNITED STATES SUGAR CORPORATION, Appellee.
 No. 15208.
 United States Court of Appeals, Fifth Circuit.
 Jan. 21, 1955.
 
 Harold B. Wahl and Russell L. Frink, Jacksonville, Fla., G. L. Reeves, Tampa, Fla., Frank G. Kurka, Wilmington, N.C., William J. DeHoff, Jacksonville, Fla., of counsel, for appellants.
 W. O. Mehrtens and Herbert S. Sawyer, Miami, Fla., F. C. Hillyer, Jacksonville, Fla., Forest P. Tralles, St. Louis, Mo., Evans, Mershon, Sawyer, Johnston & Simmons, Miami, Fla., of counsel, for appellee.
 Before HOLMES, BORAH, and RUSSELL, Circuit Judges.
 HOLMES, Circuit Judge.
 
 
 1
 The appellants sought a declaratory judgment as to their rights and legal relations under a contract, which contract they contend was misconstrued by the court below. On February 26, 1954, a case was pending before the Florida Railroad and Public Utilities Commission concerning the appellee's attempts to secure lower freight rates. There was also pending an undercharge suit against appellee in the district court. On that date, a meeting was held between representatives of the parties for the avowed purpose of arriving at an agreement covering the revision of charges paid by the Sugar Company on inbound movements of sugar cane and outbound movements of products, with the end in view of dismissing the Florida Railroad and Public Utilities Commission case, as well as settling various requests of the Sugar Company for lower freight charges. On the day following this conference, a memorandum of conference was prepared. This memorandum, among other things, provided that the appellants would dismiss the undercharge suit against appellee, and that the parties would join in seeking dismissal of the rate case.
 
 
 2
 Paragraph 4 of the contract formed the basis of the present controversy. It obligated the appellants to make such revisions of rates and/or mileage allowances paid for use of cars as to produce a gain of approximately $200,000 per year to the Sugar Company, predicated upon the volume of movement during the 1952-53 season. The complaint alleged that, in compliance with the memorandum, appellants had dismissed the undercharge suit, the rate suit had been dismissed, and that appellants had filed new tariffs which would operate to save appellee $200,000 by a reduction in inbound sugar-cane rates, an increase in the allowance to be made for use of appellee's cars, and a reduction in outbound raw sugar rates. It alleged further that, despite this action on the part of appellants, the appellee had caused the rate case before the Florida Railroad and Public Utilities Commission to be reopened and that, unless appellee were enjoined from further prosecuting the action, irreparable injury would flow to appellants.
 
 
 3
 The verified answer, as amended, stated that the new tariffs had not been filed until after the suit was filed, and were not to go into effect until a future date. It denied that the above-mentioned provision of the contract permitted appellants to reduce the outbound raw-sugar rate, and recited facts tending to show that, under said paragraph, the appellants agreed to make the $200,000 adjustment either by reducing inbound sugar-cane rates, or increasing car allowances. Since the appellee was of the opinion that the new tariffs did not conform to the agreement, the appellee notified appellants that the agreement would be treated as rescinded, and the parties would revert to their rate status which existed prior to the agreement.
 
 
 4
 At the interlocutory hearing, the court considered the pleadings and unsworn statements of counsel, but refused appellants' proffer of evidence. It held that the memorandum was not ambiguous and not susceptible to the construction contended for by the appellants. The court thought that the revisions of rates agreed to referred only to sugar-cane rates. The temporary injunction was denied. At a hearing held to settle findings of fact and conclusions of law, appellants insisted that the court was precluded from basing its decision on the verified answer and unsworn statements made by counsel for appellee. In view of the ruling of the court that the contract was free from ambiguity, the appellants insisted upon the entry of an appealable judgment. The court acceded to this request by dismissing the complaint. Appellants contend that the contract as a whole is subject to their construction and was intended to permit them to adjust either the inbound cane rate or the outbound sugar rates, or both. They point out that the purpose of the conference was to adjust both rates; that where cane rates are intended, the word rates is preceded by the words 'sugar cane'; and that both the letter of transmittal and the motion to dismiss the rate case referred to the 'differences' among the parties.
 
 
 5
 The contention is made by the appellee that the agreement can refer only to inbound cane rates and does not permit the appellants to make the adjustment by amending outbound products rates. To support this argument, they find it necessary to rely partially upon the averments of their answer, which they contend the court properly considered in its ruling on the temporary injunction. They also argue that there is no equity in the petition; that irreparable damage is not shown by the facts as alleged; that the court was without power to enjoin the administrative proceedings; and that, in any event, it properly refrained from doing so.
 
 
 6
 The parties, by the contract, attempted to settle all of their freight-rate differences growing out of inbound movements of sugar cane and outbound movements of products. The construction argued by the appellee and accepted by the court below would have the railroad make concessions totaling almost a quarter of a million dollars a year, and still be subject to any new litigation that might be filed by the appellee for additional decreases in its rates on outbound movements of products, namely raw sugar. It is apparent from a reading of the entire contract that, where the parties intended a rate to apply on sugar cane, they specifically used the words 'net transit rates on sugar cane' or the words 'on sugar cane.' Obviously, the parties were not referring to sugar-cane rates alone in paragraph 4 because the word 'rates' was used without any qualifying restriction. Furthermore, the preamble to the agreement shows that the purpose of the conference was to reach an agreement on charges paid on both inbound sugar cane and outbound raw sugar.
 
 
 7
 We think that paragraph 4 of the contract does not restrict the word rates to sugar-cane rates. The appellants allowed a reduction of $200,000 in freight rates to the appellee in return for the dismissal of certain litigation against them. The court below erred in refusing to require the appellee to comply with the provisions of the agreement. We think that the appellants should have been given an opportunity to present their proof for injunctive relief. The judgment appealed from is reversed and the cause remanded for further proceedings not inconsistent with this opinion.
 
 
 8
 Reversed and remanded.
 
 
 9
 Judge RUSSELL sat during the oral argument of this case but, due to illness, took no part in this opinion.